IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KIMBERLY FULKERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-CV-1271-SMY |
| | ) |
| CITY OF BELLEVILLE, ILLINOIS, | ) |
| CITY OF BELLEVILLE BOARD OF | ) |
| FIRE AND POLICE COMMISSIONERS, | ) |
| and WILLIAM CLAY, III, individually | ) |
| and in his official capacity, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Kimberly Fulkerson filed the instant lawsuit against Defendants City of Belleville ("the City"), City of Belleville Board of Fire and Police Commissioners ("the Board"), and William Clay III. In the First Amended Complaint, she asserts claims for the denial of her equal protection rights in violation of 42 U.S.C. § 1983 (Count I); sex discrimination in violation of Title VII (Count II); retaliation in violation of Title VII (Count III); intentional or disparate impact sex discrimination in violation of Title VII (Count IV)[1]; and sex discrimination and retaliation in violation of The Illinois Human Rights Act (Counts V and VI) (Doc. 17).

Now pending before the Court is Defendants' motion for summary judgment (Doc. 36) and Plaintiff's opposition to the same (Doc. 45). For the following reasons, the motion is **GRANTED**.

## Factual Background

The following material facts are undisputed unless otherwise noted: Kimberly Fulkerson

---

[1] Plaintiff advises that she intends to voluntarily dismiss Count IV and does not address Defendants' motion regarding that claim (Doc. 45, p. 12). As Plaintiff has not moved to voluntarily dismiss the claim, the Court construes her failure to do so as an admission of the merits of Defendants' motion with respect to Count IV.

became a police officer with the Belleville Illinois Police Department on May 19, 1994 (Doc. 44-1). To determine eligibility for promotions within the Department, officers are tested and ranked on eligibility lists based on their scores. These eligibility lists are active for two to three years before they expire. Fulkerson was promoted to Sergeant on March 25, 2007 after finishing fifth on the eligibility list (Doc. 44-2, p. 9).

Fulkerson applied for the rank of Lieutenant in 2009. At that time, written promotion examinations were created and administered by the Southwestern Illinois Community College Police Academy (Doc. 44-41, p. 4). Fulkerson ranked fourth on the 2009 promotional list for Lieutenant. Fulkerson and John Moody tied with 81.57, while Larry Lunk (81.80) and Jim Dahm (82.30) rounded out the top four (Doc. 44-4).[2] Although Moody and Lunk were promoted to Lieutenant, Dahm was passed over for the position (Doc. 44-7, pp. 1-2).

In 2011, the Department switched the administration of examinations from the Southwestern Illinois Community College Police Academy to Stanard & Associates (Doc. 44-41, p. 4). The Stanard exams were "utilized, endorsed by and in joint partnership with the Illinois Association of Chiefs of Police" (Doc. 44-41, p. 4; Doc. 44-10). Chief Clay selected the Stanard exam based on the recommendation of the Illinois Association of Chiefs of Police (Doc. 44-41, p. 4; Doc. 44-8). The Stanard exams were promoted as objective, with the stated goal of promoting the most qualified candidates and eliminating various biases (Docs. 44-10, 44-11).

From 2009 to 2018, Fulkerson failed to obtain the minimum passing score to be promoted to Lieutenant. In 2018, she achieved the lowest qualifying score of any officers, scoring a 67.93 with the next lowest being an 84.88 (Doc. 44-17, p. 1). These scores were compiled from her

---

[2] Although Fulkerson and John Moody tied for third place, the parties do not dispute that Moody was properly listed at third place because of his seniority. Fulkerson concedes that, "Captain Moody had received a 'retroactive' hire date pursuant to a Consent Decree with the Department of Justice that declared his hire date to be before mine" (Doc. 45-1, ¶ 15).

written score of 26.60, a chief score of 15, oral points of 12.33, and seniority points of 10 (Doc. 44-17, p. 1).  The other candidates scored as follows: Keilbach (93.95); Kroenig (91.13); Mattingly (89.05); Hunter (85.86); Harris (84.88) (Doc. 44-17, p. 1).  Mattingly was promoted to Lieutenant in February 2019 (Doc. 45, p. 3).

On February 11, 2019, Fulkerson submitted a three-page internal complaint, in which she states, "From day one of my career I have been in a hostile work environment of some kind.  The last few years have been by far the hardest to endure" (Doc. 44-29, p. 1).  Further, she alleges that Lieutenant Keilbach was "heavily involved in [an] investigation which ultimately cost [her] husband his job with BPD"; recounts an incident in which Keilbach allegedly accused her of mishandling confidential files and later refused to apologize; and states that the relationship has improved in the two years since, with "contact professional and at a minimum" (Doc. 44-29, pp. 1, 3).  Captain Heffernan investigated Fulkerson's claims and submitted a report to Chief Clay on February 15, 2019, finding insufficient factual evidence that Fulkerson was harassed because she is a woman and insufficient factual evidence to "sustain that Lt. Keilbach facilitated a hostile working environment" (Doc. 44-30, p. 3).

In July 2019, Captain Moody retired (Doc. 44-36, p. 1).  Around the same time, the Department experienced financial difficulties, its Collective Bargaining Agreement expired, it lost at least a dozen officers (Doc. 44-51, pp. 188-189), and furloughed two officers (Doc. 44-51, p. 75).  Chief Clay decided to keep some Lieutenants but not to open a position for Fulkerson to become a Lieutenant (Doc. 44-51, pp. 52, 54, 82-83).  Chief Clay assigned Master Sergeant Rob Rust as an interim commander to lead one of the squads (Doc. 45-1, ¶ 25).

On September 3, 2019, Fulkerson filed a charge with the EEOC and Illinois Department of Human Rights alleging a failure to promote (Doc. 45-6).

## Discussion

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue as to any material fact – when the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986). If the evidence is merely colorable or is not sufficiently probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

### Equal Protection Under 42 U.S.C. § 1983 (Count I)

Fulkerson alleges that Defendants City/Board and Defendant Chief Clay, individually, denied her equal protection of the law in violation of her rights under the Fourteenth Amendment by subjecting her to discrimination due to her gender. To establish the prima facie case of an equal protection violation, Fulkerson must demonstrate that "(1) she is a member of a protected class, (2) she is similarly situated to members of the unprotected class, (3) she suffered an adverse employment action, and (4) she was treated differently from members of the protected class." *Williams v. Seniff*, 342 F.3d 774, 788 (7th Cir. 2003). Additionally, this claim against the City and Board must be analyzed pursuant to *Monell v. Department of Social Services,* 436 U.S. 658 (1978). Under *Monell,* a municipality may only be liable under 42 U.S.C. § 1983 if (1) it had an express policy calling for constitutional violations, (2) it had a widespread practice of constitutional violations that was so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority for the municipality caused the constitutional violation. *Id.* at 694-695. In other words, a municipality is liable only when its

"policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," is the moving force behind the constitutional violation. *Id.* at 694.

Fulkerson is a member of a protected class (sex) who was passed over for promotion to Master Sergeant or Lieutenant. That said, she does not dispute that testing and promotions within the Department were conducted in accordance with the Illinois Municipal Code.[3] In 2018, Fulkerson obtained a score of 76 on the written portion of the exam, which was six points lower than the score of the lowest scoring sergeant promoted to Lieutenant from the list, Hunter (Doc. 44-17, p. 1).[4] Fulkerson's attendant oral points score was also demonstrably lower than that for all other candidates (she earned 12.33 points with all of the other candidates scoring over 28 points) (Doc. 44-17, p. 1; Doc. 44-18). While she contends that her performance was excellent and that Defendants have "used their unfettered discretion to go out of their way to *not* promote her to the rank of Lieutenant or Master Sergeant" (Doc. 45, p. 18), significantly, there is no evidence that any candidate who scored lower than her was promoted to these positions or that any officer promoted to Master Sergeant during the relevant time period was otherwise treated more favorably.

Moreover, Fulkerson acknowledges that Chief Clay has discretion to staff the department as he sees fit and has failed to produce sufficient evidence that legitimate financial reasons did not motivate his decision not to open a vacancy for the Lieutenant position after Moody's retirement

---

[3] The Illinois Municipal Code guides promotional processes in police departments, requiring commissions to set minimum passing exam grades, delineate component scores and create promotional lists. 65 ILCS 5/10-1-5; 65 ILCS 5/10-1-12. See, *Zuelke v. B.P.F.C. of Broadview*, 79 Ill. App. 3d 1080, 1082 (4th Dist. 1979) (minimum exam grade of 70% upheld as valid). The Municipal Code further calls for the Board to create promotional registers, or lists, that only candidates on the lists are eligible for promotions and for promotions to be made only after the determination and declaration by the municipality administration or department head that that there is a vacancy open for promotion. See *Hammer v. City of Peoria Board of Fire & Police Commissioners*, 196 Ill. App.3d 306, 309 (3rd Dist. 1990).

[4] It is undisputed that Fulkerson was only eligible for a promotion in 2018, having failed to qualify in the interim years, or that any 2009 promotion claim is time-barred. See, *Adams v. City of Indianapolis*, 742 F.3d 720, 726 (7th Cir. 2014).

and the COVID-19 epidemic that began in 2020. Her argument that the police budget increased, without evidence demonstrating how it was to be spent on promotions instead of the other accoutrements of a police department, does not rebut the Defendants' financial showing. In sum, there is no evidence in the record from which a jury could reasonably conclude that the City or Board discriminated against Fulkerson because of her gender, let alone that a policy or widespread practice of discrimination against women existed in the Department.

Separately, Fulkerson alleges that Chief Clay violated § 1983 by failing to promote her because of her gender. An individual can only be liable under Section 1983 if he caused or participated in the alleged discriminatory conduct. *George v. Smith,* 507 F.3d 605, 609 (7th Cir. 2007). In the absence of discriminatory conduct by the City or Board as previously noted, Plaintiff's individual claim against Chief Clay fails as well. Defendants are entitled to summary judgment with respect to Count I.

### Title VII Sex Discrimination/Hostile Work Environment (Count II)

To prevail on a Title VII sexual harassment claim, a plaintiff must prove that "(1) her work environment was objectively and subjectively offensive, (2) the harassment she complained of was based on her gender, (3) the conduct was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment, and (4) there is a basis for employer liability." *Swyear v. Fare Foods Corp.,* 911 F.3d 874, 880 (7th Cir. 2018); *see also, Passananti v. Cook Cty.,* 689 F.3d 655, 664 (7th Cir. 2012). "Deciding whether a work environment is hostile requires consideration of factors like the frequency of improper conduct, its severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance." *Boss*

*v. Castro,* 816 F.3d 910, 920 (7th Cir. 2016), citing *Alexander v. Casino Queen, Inc.,* 739 F.3d 972, 982 (7th Cir. 2014).

Here, the evidence is insufficient to support a finding of a hostile or abusive work environment. First, none of the incidents that Fulkerson alleges were "severe" (altering the conditions of her employment as to create an abusive working environment), including that she received discipline for not greeting a superior officer, that she was unfairly counseled for using unprofessional language in a report, that Chief Clay did not invite her to some meetings, and that Captain Kielbach asked her in a demeaning way about whether her feelings were hurt (Doc. 45, pp. 8-9). Moreover, these isolated incidents cannot be said to have been *pervasive* as Fulkerson testified that she has not been the subject of the alleged sexual harassment since 2007 (Doc. 44-50, p. 97) and could not recall any derogatory language toward women since 2007 (Doc. 44-50, p. 126). Defendants are entitled to summary judgment with respect to Count II.

### Title VII Retaliation (Count III)

Fulkerson alleges that Defendants City/Board retaliated against her by failing to promote her to Master Sergeant or Lieutenant. To prove a prima facie case of retaliation in violation of Title VII plaintiff must allege "(1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between the protected expression and the adverse action." *Rennie v. Dalton*, 3 F.3d 1100, 1109 (7th Cir. 1993).

Filing or making an official complaint may constitute statutorily protected activity under Title VII if the substance of the complaint indicates or suggests a connection between the conduct complained of and sex, race, national origin, or some other protected class. *Kodl v. BOE of School Dist. 45, Villa Park*, 490 F.3d 558, 563 (7th Cir. 2007). See also, *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (noting that "merely complaining in general terms

of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient"). Fulkerson's submission of her internal complaint in February 2019 is not statutorily protected expression. The complaint describes her disagreements and interactions with Lieutenant Keilbach, which she characterizes as hostile. But she does not claim or even suggest that his treatment of her was discriminatory or that their issues had anything to do with her gender or sex. Consequently, the internal complaint was not protected expression and cannot support her retaliation claim.

Fulkerson also argues that she engaged in statutorily protected expression by filing a charge with the EEOC and IDHR. But there is no evidence that she suffered an adverse employment action as a result of having filed the charges; the alleged failure to promote predated the charges by years. Thus, her filing of the EEOC and IDHR charges in September 2019 is not protected expression for purposes of her retaliation claim. Defendants are entitled to summary judgment on Count III.

**Illinois Human Rights Act Sex Discrimination/Retaliation (Counts V and VI)**

Under the Illinois Human Rights Act ("IHRA"), sexual harassment, unlawful discrimination, and retaliation against a person for opposing sexual harassment or unlawful discrimination are civil rights violations. 775 ILCS 5/2-102(D); 775 ILCS 5/2-102(A). Claims of discrimination and retaliation under the IHRA follow the same statutory framework as Title VII. *Frey v. Coleman,* 141 F. Supp. 3d 873, 879 (N.D. Ill. 2015). Therefore, for the reasons detailed above, Fulkerson presents no genuine issue of material fact as to a claim under the IHRA. Summary judgment is warranted with respect to the claims in Counts V and VI as well.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED** in its entirety. The Clerk of Court is **DIRECTED** to enter Judgment accordingly and to close this case.

**IT IS SO ORDERED.**

**DATED:** August 25, 2022

**STACI M. YANDLE**
**United States District Judge**